of his employer.  In our view the fact that he was on his vacation is of no significance.  He was subject to call, he was paid his salary during the time that he was on his vacation and he received the request from the superintendent of his employer with which he complied.  His compliance with this request continued from the time he left his home until he finally returned, and the fact that he was prevented from actually carrying out his purpose to go on his way to the Brave Pump Station did not alter his legal status.  The test to be applied is, did he go upon this mission voluntarily or because of the request of his superintendent.  The referee finds that he went not only at the request of the superintendent, but in pursuance of the policy which the company followed with all its employees.  He was therefore practically under orders and in the performance of his duty when he was injured.  In the case of Haddock v. Edgewater Steel Company, 263 Pa. 120, we held that an engineer who was sent to Ohio for a similar purpose and was injured on his return to Pittsburgh in the evening about 11:30 while on his way to his residence, must be regarded as still within the terms of the act and actually engaged in the furtherance of business or affairs of the employer. We think the decision in this case is controlling in the present case.  For that reason it is unnecessary to discuss cases referred to by the learned judge of the court below in his opinion setting aside the award.

The judgment is reversed, and judgment is here entered in favor of the claimant for the amount of the award of the Workmen's Compensation Board entered April 16, 1917, together with the costs of this appeal.

---

# Miller, Appellant, *v.* Standard Steel Car Co.

*Negligence—Master and servant—Risk of employment.*

A riveter cannot recover damages from his employer for injuries resulting from a hot scale lodging in his eye, where the evi-

dence shows that he was an experienced riveter, with full knowledge of the result of hot scales flying from a rivet, that he complained to the boss of the place in which he was working, and was told to go home if he did not do the work, and that he continued at the work until he was injured.

Argued Oct. 8, 1918. Appeal, No. 152, Oct T., 1918, by plaintiff, from order of C. P. Lawrence Co., June T., 1914, No. 89, entering judgment for defendant n. o. v. in case of John Miller v. Standard Steel Car Company. Before STEWART, MOSCHZISKER, FRAZER, SIMPSON and Fox, JJ. Affirmed.

Trespass to recover damages for personal injuries.

At the trial the jury returned a verdict for plaintiff for $2,000.

On motion by defendant for judgment n. o. v., EMERY, P. J., filed the following opinion:

John Miller, the plaintiff, brought an action of trespass against the Standard Steel Car Company, the defendant, for the recovery of damages for an injury sustained by him while in the defendant's employ.

Plaintiff had entered defendant's employ and worked as a heater until 1909, when he began work as a riveter, and continued to work as a riveter from that time continuously until March 10, 1913, the day when the accident happened. The defendant company is engaged in the construction of steel cars. At the time of the injury the plaintiff was an experienced employee and had full knowledge of the results of hot scales flying from a rivet. On page 16a of the testimony the plaintiff testifies as follows:

Q. Now, how long did you say you had been working as a riveter before that?

A. From 1909 to 1913—four years.

Q. So that you were familiar and knew how the riveters worked, didn't you?

A. Yes.

Q. And you used hot rivets almost all together?

A. Yes, sir.

Q. And you knew that scales were liable to fly up or off from the rivet no matter where you were working, didn't you?

A. Yes, sir.

Q. And you hardly ever drove a rivet but what scales or sparks flew from it?

A. Whether scales fly off from the rivets?

Q. You never drove a rivet but what sparks or scales flew off?

A. Yes, sir.

Q. They always flew off?

A. Always does, yes, sir.

Q. And there was always danger of getting it in your eye, wasn't there?

A. Was not dangerous because you drive from the side and had room to watch myself; and this other was a place I had to stoop under there and couldn't watch it there.

Q. A great many times you get under cars to drive rivets, did you not?

A. No, sir.

Q. Didn't you do that sometimes?

A. No, sir, that was the first time.

Q. Driving a rivet there was the same as driving it any other place, wasn't it?

A. No, sir, it was a dangerous place—I couldn't watch it there.

Q. There is always some danger of sparks flying into your eye in driving a rivet, isn't there?

A. Yes.

Q. And you knew that didn't you?

A. I didn't know it, I used to see them fly off but I didn't know I would get hurt though.

Q. When they flew off that way you knew that it might hit you in the face or eye didn't you?

A. No.

Q. Wouldn't anybody know that?

A. Nobody knows you would get hurt there.

Q. Didn't you know from your experience as a riveter that sparks or pieces of steel might fly into your face at any time?

A. I have been on the side—watch myself all that time.

Q. And didn't you get that pair of goggles because you knew that sparks or scales were liable to hit you in the eye?

A. I bought them and saw I couldn't use them and I thought the company might furnish some good ones.

Q. You got them to see if you could use them because you knew that there was danger of getting sparks and scale in your eye, didn't you?

A. Yes.

Q. And how long was it before you were hurt did you buy them?

A. Two years before that.

Q. So you knew two years before the time you got the scale in your eye that there was more or less danger of sparks or scale flying in your eye, and you got the goggles to protect yourself, didn't you?

A. I got the goggles to try to protect myself, yes, sir.

This testimony from the plaintiff himself shows that he was an experienced riveter and had full knowledge that the sparks and scales were likely, at all times, to fly from the rivet he was driving. It further shows that two years previous to the accident he tried to guard himself from injury by purchasing a pair of goggles.

On page 5a of the record the plaintiff testifies that he had been working at this particular kind of work for a period of about a week and a half previous to the time of his injury. He also stated that he told the boss "that was a bad place to work, I cannot watch myself there," and that the boss replied, "that the job was not dangerous, for me to go to work and if he didn't want to go to work the boss might fire him."

The plaintiff was injured while at his work as a riveter by a piece of hot scale flying in his eye. There is testimony on the part of the defendant that the plaintiff's eye had been injured long previous to the time of the accident. This testimony, however, we are not considering under the present motion. The question now before us is, did the plaintiff assume all risks naturally and reasonably incident to his employment; and did he have notice of all risks which, to a person of his experience and understanding, are or ought to be open and obvious? A careful examination of his testimony leads us to the conclusion that he did. That he was an experienced riveter is beyond dispute; that he knew that with every rivet driven hot sparks and scales flew from the rivet and might lodge on his person.

"There is no uncertainty in the law applicable to cases of this kind. The master is not an insurer of the servant's safety. While he is required to furnish reasonable, suitable and safe means with which to carry on his business, yet the servant will be deemed to have assumed all risks naturally and reasonably incident to his employment; and to have notice of all risks which, to a person of his experience and understanding are, or ought to be, open and obvious. When one undertakes a perilous employment by operating a machine obviously wanting in suitable appliances for safety, knowingly and voluntarily he cannot afterwards complain in case of injury in consequence thereof, that the machinery was of a dangerous kind, and that it was wanting in appliances reasonably necessary to render it safe": Lee v. Dobson, 217 Pa. 349.

In the case of Ruger v. Coatesville Boiler Works, 257 Pa. 252, the plaintiff was injured while engaged in putting a head in a large steel boiler. To accomplish this work he was required to use steel pins and hammers of different weights. On the day he was injured his foreman directed him to drive steel pins between the rim of the boiler head and the boiler, and he was directed to use a larger hammer. This was the usual and customary

manner of performing this work; the plaintiff was entirely familiar with the method and operation and had headed many boilers prior to the day of the accident in the same manner except that he had not theretofore used a hammer so heavy as the one he was using when the accident happened. When his foreman instructed him to use a larger hammer he demurred, whereupon the foreman told him that if he didn't propose to do the work with the tools suggested, he should go home. While striking one of the steel pins with the large hammer, a small splinter from the pin struck him in the eye and the eye was removed. The court below granted a nonsuit, and in the opinion refusing to take off the nonsuit, say:

"He seeks to recover damages for his injury and bases his right to recover on two grounds:

"First, because the defendant was negligent 'in coercing and requiring him' to do the work on pain of being discharged.

"Second, because the defendant furnished, for the work, improper tools and pins, the latter being defective, and were liable to splinter when struck with a hammer.

"An employer is not guilty of negligence merely because he insists that his employee shall work. If, however, he or his foreman for him requires the employee to labor with improper and defective tools and appliances or in unsafe places and injury results, liability necessarily follows unless the danger was so imminent that a reasonably prudent person would have avoided it: (Lee v. Dobson, 217 Pa. 349; Porter v. Wilson, 62 Pa. Superior Ct. 339; Ignash v. Murphy, Cook & Co., 249 Pa. 223; Broski v. Phœnix Iron Co., 62 Pa. Superior Ct. 305.

"The difficulty with the plaintiff's case, however, was that there was not a scintilla of testimony to show that either the steel pin or the hammer was imperfect. Nor was there a suggestion that the use of a heavier hammer, to accomplish the object sought, was not entirely proper. The plaintiff lost his eye as the result of an accident

wholly unforeseen and against which, so far as the testimony shows, no human foresight could have provided."

Upon appeal the judgment was affirmed on the opinion of the court below. This case is certainly analogous to the one now before us. There, Ruger protested to his foreman that the work was dangerous; the plaintiff in this case did the same. Ruger was directed to continue his work on the pain of being discharged; the plaintiff in this case states that he was told he could go home if he did not do this work. Ruger was injured by a splinter from a steel pin lodging in his eye; the plaintiff in this case was injured by a hot scale lodging in his eye.

This case is further strengthened for the defendant by the fact that the plaintiff knew that with every rivet driven sparks would fly off and there was a likelihood or a probability of one of the sparks lodging in the eye.

"Employers are only required to furnish a reasonably safe place in which to work, and reasonably safe tools with which to work": Powell v. American Sheet & Tin Plate Co., 216 Pa. 618.

"The mere happening of an accident raises no presumption of negligence against the master, specific act of negligence must be shown": Wojciechowski v. Sprekels' Sugar Refining Co., 177 Pa. 57.

In the case of Flaherty v. McClintic-Marshall Construction Co., 243 Pa. 580, the Supreme Court say:

"A servant assumes the risk naturally and reasonably incident to his employment, and all risks of the hazardous and perilous employment of which he has knowledge and apprehends. If his master engaged his services for the hazardous employment and he does not know by observation or experience of the perils attending it, the master is responsible for any injuries resulting from the risk. But this rule has no application where a servant has full knowledge of his dangerous position and knows as well how to avoid the danger as his master."

Certainly an experience extending over the period of some years gained while driving rivets, must have shown

to the plaintiff the risks of the employment in which he was engaged.

We are of the opinion that the plaintiff was injured by an accident naturally and reasonably incident to his employment; that he was experienced in the line of work in which he was hurt, and that he assumed the risk of the accident which injured him.

The motion for judgment n. o. v. is granted.

*Error assigned* was the order of the court.

*James A. Chambers,* with him *Charles E. Mehard,* for appellant.

*J. Norman Martin* and *Norman A. Martin,* for appellee, were not heard.

PER CURIAM, January 4, 1919:

Nothing need be added to what is so well stated by the learned judge presiding, in his opinion directing judgment for the defendant non obstante. For the reasons there given the judgment so entered is affirmed.

---

## Hilton's Estate.

*Husband and wife—Marriage—Evidence—Presumption.*

1. Where a man marries in pursuance of a license, and dies about a year afterwards, his wife by such marriage is entitled to administration on his estate, as against another woman claiming that she was the wife of the decedent, if it appears that the claimant's proof of a former actual marriage of the decedent with herself depends on her own testimony and that of another interested witness, that the proof of general reputation as husband and wife, is contradicted by many witnesses who testified that the general reputation was that they were not married, that claimant was married to another man after the date of her alleged marriage to decedent, and was living with such man at the time of decedent's death. The fact that the decedent addressed a letter to the claimant as his wife, and that he started divorce proceedings against her, which he discontinued, are immaterial.